IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                          Civil No.:__1:20-cv-00001_ (FJS/TWD)


                                    Plaintiff        COMPLAINT-Action to Foreclose
                                                     A Mortgage

-v-

Mary L. Woodard a/k/a Mary Hale
1442 Johnsonville Road
Johnsonville, NY 12094

Cavalry SPV I, LLC, as Assignee of Synchrony
Bank formerly known as GE Capital Retail Bank
500 Summit Lake Drive
Suite 400
Valhalla, NY 10595

Rensselaer County Housing Resources, Inc.
415 River Street
Troy, NY 12180


John Doe, Mary Roe, and XYZ Corporation
1442 Johnsonville Road
Johnsonville, NY 12094
_____

      The United States of America, a Sovereign, by Pincus Law Group, PLLC,

Attorneys for the plaintiff, complains and alleges as follows:

      1.    This Court has jurisdiction under the provisions of Title 28, United States Code,

Section 1345.

      2.    On or about Sept. 29, 2006, at the request of Defendant, Mary L. Woodard a/k/a

Mary Hale, (hereinafter "Defendant"), the Plaintiff, the United States of America, acting through

the Rural Housing Service or successor agency, United States Department of Agriculture,

(hereinafter "Plaintiff"), did lend to the Defendant, the sum of $109,820.00, which sum the

Defendant did undertake and promise to repay, with interest at 6.2500% in specified monthly installments.

3.      As evidence of the indebtedness, the Defendant did execute and deliver to the Plaintiff a Promissory Note dated Sept. 29, 2006, a true copy of which is attached as Exhibit "A".

4.      In order to secure the payment of the indebtedness, the Defendant did execute, acknowledge, and deliver to the Plaintiff, a real property mortgage dated Sept. 29, 2006, a true copy of which is attached as Exhibit "B".  The real property that is security for the mortgage is commonly known as 1442 Johnsonville Road, Johnsonville, NY, 12094 located in  Rensselaer County, New York and more particularly described as set forth in the legal description attached to Exhibit "B", and is also known as Parcel ID/Tax Account # 23.2-2-22.

5.      The mortgage was duly recorded in the Rensselaer County Clerk's Office on or about October 19, 2006 in Book 3775 at Page 21, Instrument No. 2006-0024881.

6.      Plaintiff is the owner and holder of the Promissory Note and Mortgage.

7.      The Defendant has breached and violated the provisions of the Promissory Note and Mortgage in that they did neglect and fail to pay the installments of principal and interest when due beginning with the **September 28, 2017** payment, despite due demand therefore and by failing to make payment of real property taxes when due, thus making it necessary for the plaintiff to pay the same to protect its interest.

8.      By reason of the defaults described herein, plaintiff has elected to declare the entire sums secured by the mortgage to be due and payable.

9.      There is now justly due and payable to the plaintiff**,** as of December 30, 2019, on the Promissory Note and Mortgage the following sums:

| | |
|---|---|
| Unpaid Principal | $107,227.66 |
| Unpaid Interest | $15,680.28 |
| Subsidy to Be Recaptured | $9,281.07 |
| Escrow | $0.00 |
| Late Charges | $61.04 |
| Other Fees | $10,307.87 |
| TOTAL: | $142,557.92 |

, together with interest at the rate of 6.250% per annum on principal and all advances from December 31, 2019.

10.     Upon information and belief, plaintiff may be compelled to make additional advances for payment of taxes, hazard insurance water and sewer charges, or other municipal assessments maintenance, in order that it may protect and preserve security, but the nature and amount thereof is unknown to plaintiff at this time.  Nevertheless, plaintiff seeks recovery thereof and therefore, together with interest thereon.

11.     No other action or proceeding has been brought at law or otherwise for the recovery of said sums secured by the Promissory Note and Mortgage, or any part thereof.

12.     The Defendant, besides Mary L. Woodard a/k/a Mary Hale, named in the caption of the Complaint, as set forth in Exhibits "C", have or may claim to have some interest in or lien upon the mortgaged premises or some part thereof, which interest or lien, if any accrued subsequently to the lien of the United States mortgage and is subsequent thereto.

13.     That the plaintiff has complied with the notice provisions of the New York State RPAPL Section 1304.  A copy of the required notice is attached hereto as Exhibit "D".

14.     Upon information and belief, the provisions of Banking Law Section 595-a, and any rules and regulations promulgated thereunder, and Banking Law Sections 6-1 and 6-m and RPAPL section 1302(1) are not applicable to the mortgage loan that is the subject of this proceeding.

15.     At the time this proceeding was commenced, the plaintiff has complied with the provisions of New York State RPAPL Section 1306 regarding filing with the Superintendent of the New York State Banking Department.  A copy of the required filing is attached hereto as Exhibit "E".

16.     The true names of the defendants John Doe, Mary Roe and XYZ Corporation are unknown to the United States, those names being fictitious, but intending to designate tenants, occupants or other persons, if any, having or claiming any estate or interest in possession upon the premises or any portion thereof.

WHEREFORE, plaintiff demands judgment:

(a) That the defendants, or either or any of them, subsequent to the filing of the Notice of Pendency of this action, and every person whose conveyance or encumbrance is subsequently recorded, be forever barred and foreclosed of all right, claim, lien and equity of redemption in the mortgaged premises;

(b)  That the premises may be decreed to be sold according to law;

(c) That the amount due to the plaintiff on the promissory note and mortgage may be adjudged;

(d) That the moneys arising from the sale may be brought into Court;

(e) That the plaintiff may be paid the amount adjudged to be due to the plaintiff with interest thereon to the time of such payment, together with the costs and expenses of this action

and the expenses of the sale, so far as the amount of such money properly applicable

thereto will pay the same;

(f)   And that the plaintiff may have such other and further relief as may be just and equitable.

Dated:  Uniondale, New York, Jan. 2, 2020
/s/ Nicole B. LaBletta
_____
Nicole B. LaBletta, Esq.
Pincus Law Group, PLLC
425 RXR Plaza
Uniondale, NY 11556
(516) 699-8902 (phone)
(516) 279-6990 (fax)
nlabletta@pincuslaw.com

# EXHIBIT A

Form RD 1940-16
(Rev. 7-05)

Form Approved ████

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**RURAL HOUSING SERVICE**

## PROMISSORY NOTE

Type of Loan  SECTION 502

Loan No. ████████

Date: 09/29  20 06

**SATISFIED**

This _____ day of _____ ,20 ___
United States of America
By: _____
Title: _____
USDA, Rural Housing Services

1442 Johnsonville Road

(Property Address)

Johnsonville , Rensselaer , NY
(City or Town)        (County)        (State)

BORROWER'S PROMISE TO PAY. In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors) ("Government") $ 109,820.00 (this amount is called "principal"), plus interest.

INTEREST. Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of _____ 6.2500 _____ %. The interest rate required by this section is the rate I will pay both before and after any default described below.

PAYMENTS. I agree to pay principal and interest using one of two alternatives indicated below:

I. Principal and interest payments shall be temporarily deferred. The interest accrued to _____ , _____ shall be added to the principal. The new principal and later accrued interest shall be payable in __396__ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $ _____ , and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

II. Payments shall not be deferred. I agree to pay principal and interest in __396__ installments as indicated in the box below.

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 28th day of each month beginning on __October 28__ , __2006__ and continuing for __395__ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on September 28 , 2039 , I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
My monthly payment will be $ 655.81 . I will make my monthly payment at the post office address noted on my billing statement _____ or a different place if required by the Government.

PRINCIPAL ADVANCES. If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

HOUSING ACT OF 1949. This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

1

LATE CHARGES. If the Government has not received the full amount of any monthly payment by the end of ___15___ days after the date it is due, I will pay a late charge. The amount of the charge will be _____2_____ percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once for each late payment.

BORROWER'S RIGHT TO PREPAY. I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

ASSIGNMENT OF NOTE. I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

CREDIT ELSEWHERE CERTIFICATION. I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

USE CERTIFICATION. I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY. If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT. I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

SUBSIDY REPAYMENT AGREEMENT. I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

CREDIT SALE TO NONPROGRAM BORROWER. The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

DEFAULT. If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as described in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

2

NOTICES. Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA Rural Housing Service, c/o Customer Service Branch Post Office Box 66889, St. Louis, MO 63166 , or at a different address if I am given a notice of that different address.

OBLIGATIONS OF PERSONS UNDER THIS NOTE. If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

WAIVERS. I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING: Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.**

_____ Seal
Borrower Mary L Woodard

_____ Seal
Borrower

_____ Seal
Borrower

_____ Seal
Borrower

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL $ | |

3

# EXHIBIT B

**Rensselaer County**
**Frank J. Merola**
**County Clerk**
**Troy, New York**

3-19-12

|  |  |
|---|---|
| | **Book: 3775**   **Page: 21** |

**Document Number:** ███████
**Recorded Date:** 10/19/2006

**Document Type:** Mortgage-Con/Mod/Ext

**Parties:** WOODARD, MARY L
UNITED STATES DEPT OF AGRICULTURE

**Pages Charged:** 7
**Pages Scanned:** 8

**Comment:** WOODARD/US DEPT OF ARG
**Recorded By:** TRINITY ABSTRACT

## ** Examined and Charged as Follows **

| | |
|---|---|
| Mortgage-Con/Mod/Ext | 46.00 |
| Affidavit | 5.00 |
| Coversheet | 3.00 |
| **Recording Fee:** | **54.00** |

| | | Town | Serial # | Consideration |
|---|---|---|---|---|
| Tax-Mortgage | 0.00 | PITTSTOWN | CX  5681 | 109,820.00 |
| Basic | 0.00 | | | |
| Local | 0.00 | | | |
| Additional | 0.00 | | | |
| Special Additional | 0.00 | | | |
| Transfer | 0.00 | | | |
| **Tax Fee:** | **0.00** | | | |

## ** DO NOT REMOVE **
## ** This Page is Part of the Document **

I hereby certify that the within and foregoing was recorded in the Clerk's Office for:

**File Information**
Document Number: ███████
Recorded Date: 10/19/2006  06:12 P
Receipt Number: ████

**Mail Back**
TRINITY ABSTRACT
SHAWN PATRICK ABRAMS
10 WASHINGTON STREET
RENSSELAER NY 12144-



Frank J. Merola
Rensselaer County Clerk

Form RD 3550-14 NY
(Rev. 6-03)

(Space Above This Line For Recording Data)

Form Approved

███████████████

### United States Department of Agriculture
### Rural Housing Service

# MORTGAGE FOR NEW YORK

THIS MORTGAGE ("Security Instrument") is made on     September 29, 2006     . [Date]
The mortgagor is

Mary L. Woodard                                                                   ("Borrower").
This Security Instrument is given to the United States of America acting through the Rural Housing Service or
successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing
Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis,
Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively
called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full
debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| 9/29/2006 | $109,820.00 | 9/28/2039 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all
renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under
paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy
which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a. For this purpose,
Borrower irrevocably grants and conveys to Lender the following described property located in the County of
      Rensselaer                                     , State of New York:

                 SEE ATTACHED SCHEDULE A

which has the address of   1442 Johnsonville Road, Johnsonville                  , New York   12094
                           [Street]                                [City]                    [ZIP]
("Property Address");

According to the Paperwork Reduction Act of 1996, no persons are required to respond to a collection of information unless it
displays a valid OMB control number. The valid OMB control number for this collection is 0575-0172. The time required to
complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instruc-
tions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collec-
tion of information.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Page 2 of 6

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the Property.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so. Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

**15. Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this

Security Instrument.

**17. Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

**19. Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**21. Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be decreed incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

**23.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

**24.** Borrower agrees that Lender will not be bound by any present or future state laws, (a) providing for valuation, appraisal, homestead or exemption of the Property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c)

Page 5 of 6

prescribing any other statue of limitations, (d) allowing any right of possession or, (e) limiting the conditions which Lender may be regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such state law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent.

   **25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider     ☐ Planned Unit Development Rider     ☐ Other(s) [specify]

Witnesses:

_____        _____ (Seal)
                                        Mary L. Woodard   Borrower

_____        _____ (Seal)
                                                          Borrower

## ACKNOWLEDGMENT

STATE OF NEW YORK         }
                          } SS:
COUNTY OF __WARREN__      }

   On the __29th__ day of __September__ in the year __2006__, before me, the undersigned, a notary public in and for said State, personally appeared __Mary L. Woodard__, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose names(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the individual(s) or the person on behalf of which the individual(s) acted, executed the instrument.

Matthew R. Ludemann
Notary Public - State Of New York
▓▓▓▓▓▓▓▓▓▓
Qualified In Warren County
Commission Exp.11/30/__

                                        _____
                                                  Notary Public

## SCHEDULE A

**ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND** together with the buildings and improvements thereon erected, situate on the east side of Maple Avenue, formerly called the Millertown Road, in Johnsville, Town of Pittstown, County of Rensselaer and State of New York, described as follows:

**BEGINNING** at a point in the northeast corner of Lot No. 45 as designated on a map of lands of Mrs. Geo O. Catlin made by Geo W. Finch, C.E., in April 1888, which beginning point is also in the northeast corner of land now or formerly reputedly owned by Charles Culnane, and running thence northeasterly about north 10° east 167.5 feet, more or less, to the southeast corner of a parcel of land conveyed by Alvin T. Hoag and wife to John Irving Sewell by deed dated November 1, 1906 and recorded March 4, 1907 in the Rensselaer County Clerk's Office in Book of Deeds 308 Page 263; thence North 13° 45' west along the east line of the parcel of land conveyed by Hoag and wife to said Sewell as aforesaid, and also along the east line of a parcel of land conveyed by Maud Lee Van Wert to said John I. Sewell by deed dated March 30, 1899 and recorded April 5, 1899 in the Rensselaer County Clerk's Office in Book of Deeds 266 Page 385, 91 feet more or less, to the south of line of a parcel of land conveyed by J. Irving Sewell and wife to Mary Esther Van Wirt by deed dated November 7, 1906 and recorded June 17, 1907 in the Rensselaer County Clerk's Office in Book of Deeds 310 Page 291; thence southwesterly on a course about south 80° 30' west along the south line of the parcel conveyed to Mary Esther VanWirt as aforesaid and then along the north line of a parcel of land conveyed by said Mary Esther VanWirt to said J. Irving Sewell by deed dated November 7, 1906 and recorded March 4, 1907 in said clerk's office in Book of Deeds 308 Page 262 (which two last mentioned deeds were exchanged in an agreed boundary line alteration and in which deeds this line was erroneously stated to run south 60° 30' west) a total distance of 146 feet, more or less, to a point now or formerly marked by a marble monument in the east line of said Maple Avenue, formerly Millertown Road; thence south 8° 15' west along the east line of said Maple Avenue 288.4 feet, more or less, to the northwest corner of the first above mentioned Lot No. 45, being also the north line of land now or formerly reputedly of Charles Culnane; thence north 72° 15' east along the north line of said Lot No. 45, being also along the north line of land now or formerly reputedly of Charles Culnane, a distance of 180 feet, more or less, to the place of beginning, being a parcel of land bounded northerly by land now or formerly reputedly of Mary Esther VanWirt; easterly by land now or formerly reputedly of Alvin T. Hoag; southerly by land now or formerly reputedly of Charles Culnane, and westerly by the east line of said Maple Avenue, formerly the Millertown Road.

*premises are improved by A 1 or 2 family dwelling Request For Exemption is Being Made*

# EXHIBIT C

**Rensselaer County**
**Frank J. Merola**
**County Clerk**
**Troy, New York**

| | **Book: 3775** | **Page: 29** |
|---|---|---|

**Document Number:** 2006- 00248882       **Document Type:** Mortgage
**Recorded Date:** 10/19/2006

**Parties:** WOODARD, MARY L
RENSSELAER COUNTY HOUSING RESOURCES                    **Pages Charged:** 7
**Comment:** WOODARD/TRIP                                              **Pages Scanned:** 8
**Recorded By:** TRINITY ABSTRACT

**\*\* Examined and Charged as Follows \*\***

Mortgage                 46.00
Coversheet                3.00

         **Recording Fee:**      49.00

| | Town | Serial # | Consideration |
|---|---|---|---|
| Tax-Mortgage | 225.00 PITTSTOWN | CX  5682 | 20,000.00 |
| Basic | 100.00 | | |
| Local | 50.00 | | |
| Additional | 25.00 | | |
| Special Additional | 50.00 | | |
| Transfer | 0.00 | | |
| Tax Fee: | 225.00 | | |

**\*\* DO NOT REMOVE \*\***

**\*\* This Page is Part of the Document \*\***

I hereby certify that the within and foregoing was recorded in the Clerk's Office for:

**File Information**
Document Number: 2006- 00248882
  Recorded Date: 10/19/2006 06:15 P
  Receipt Number: 327552

**Mail Back**
RENS COUNTY HOUSING
415 RIVER ST

TROY NY 12180-



Frank J. Merola
Rensselaer County Clerk



**NOTE AND MORTGAGE**

Doc#: 00248882
Bk: 3775 Pg: 30

THIS NOTE AND MORTGAGE is made the ___29th___ day of ___September___, 2006, between (Homeowner) __Mary L. Woodard__, residing at __P.O. Box 305 Schaghticoke, New York__ and RENSSELAER COUNTY HOUSING RESOURCES, INC., a not-for-profit corporation organized and existing under the laws of New York State with offices at 415 River Street in the City of Troy, Rensselaer County, New York,

The Homeowner hereby acknowledges that Rensselaer County Housing Resources, Inc. has provided funds in the Principal Amount, as defined in Paragraph 1 of this Note and Mortgage, under the HOME Program of the National Affordable Housing Act ("Program") as funds to be held in trust and to be used solely in connection with the acquisition or improvement of the Property (as defined in Paragraph 2 of this Note and Mortgage).

The Homeowner understands that the Principal Amount represents a portion of the cost of the improvements or the purchase price of the Property and hereby agree to the recapture of such amount as may hereinafter be required as the ultimate beneficiary of such improvement and/or as the purchaser or owner of the Property.

1. The Principal Amount of this Note and Mortgage is the sum of __$ 20,000.00__. Provided the Homeowner complies with all terms and conditions set forth herein for the entire term of this Note and Mortgage no interest shall accrue on the repayment of the Principal Amount and no monthly installment payments shall be made by the Homeowners. The amount and terms of repayment (Recapture Obligation) required, if any, shall be as set forth in the rider attached hereto (the Rider).

2. The Homeowner mortgages to Rensselaer County Housing Resources, Inc. all right, title and interest of the Homeowner in and to the property described in Schedule A annexed hereto and made a part hereof, which property is also known by the street address __1442 Johnsonville Road Johnsonville__, Rensselaer County, New York, (Tax Map #0160-083) (the "Property"); together with:

      A. All the buildings and improvements on the Property,
      B. All of the Homeowner's right, title and interest in and to any land lying in the bed of the streets in front of or adjoining the Property to the center lines of such streets;
      C. All fixture which are now or which later may be attached to or used in connection with the Property. This is not intended to include household furniture,
      D. All condemnation awards for any taking by a government or agency of the whole or part of the real property or any easement in connection with the Property. This includes awards for changes of grades of streets,
      E. All right, title and interest but not obligation, of the Homeowner in and to all l eases and other agreements affecting the use or occupancy of the Property or any common area appurtenant thereto now or hereafter entered into (the "Lease") and the rents, issues and profits of the Property (the "Rents"). This provision will not be construed as providing Rensselaer County Housing Resource's consent to any lease of the Property, and
      F. Any right, title and interest of the Homeowner in and to any common areas appurtenant thereto.

3. The Homeowner will fulfill the Recapture Obligation at the time and in the manner provided in the Rider. If the Homeowner fails to make any payment required pursuant to the Rider to the Note and Mortgage, the lien created by this Mortgage will remain a lien on the Property to secure payment of the unpaid portion of the Recapture Obligation.

4.  The parties hereby acknowledge that the Property is subject to the lien of a first loan made by **USDA Rural Development** (the "Lender") in the amount $ **109,830.00** .  The parties further agree that all of the terms and provisions of this Note and Mortgage will be subject and subordinate to the lien of the Lenders and to any payments or expenses already made or incurred or which may hereafter be made or incurred, pursuant to the terms of such mortgage loans or incidental thereto, or to protect the security thereof, to the full extent thereof. If any action or proceeding of foreclosure is instituted by the Lenders, the Homeowner will immediately upon service thereof, deliver to Rensselaer County Housing Resources, Inc. a true copy of each notice, petition, summons or other paper served in such action or proceeding or in any such action or proceeding.

5.  The Recapture Obligation secured by this Note and Mortgage will become immediately due and payable if any one of the following occurs:

A.  If the Homeowner fails to make any payment on the Lenders' loans within 60 days of the date that such payment was due,
B.  If the Homeowner sells, rents, conveys any interest in or otherwise fails to occupy the Property as his/her principal place of residence,
C.  If any other default exists under this Note and Mortgage or under either of the Lenders' loans, or
D.  If any other default or condition occurs which Rensselaer County Housing Resources, Inc. reasonably believes may jeopardize its security interest in the Property.

6.  The Homeowner will keep the improvements on the property insured against loss by fire and other risks as required by the Lenders or as required by Rensselaer County Housing Resources, Inc.  The policy shall contain the standard New York Mortgagee clause in the name of Rensselaer County Housing Resources, Inc.  If the Homeowner fails to keep the buildings insured, Rensselaer County Housing Resources, Inc. may obtain the insurance at the Homeowner's expense.

7.  The Homeowner shall keep the property in good repair.  The Homeowner shall not, without the consent of Rensselaer County Housing Resources, Inc., alter, demolish or remove the buildings and improvements on the Property.

8.  The Recapture Obligation secured hereby will not require the payment of installments so long as the Homeowner is in full compliance with all of the terms and conditions of this Note and Mortgage.

9.  The Homeowner represents and warrants that the Homeowner lawfully owns the Property and has the right to mortgage the Property to Rensselaer County Housing Resources, Inc.  The Homeowner gives Rensselaer County Housing Resources, Inc. a general warranty of title.  The Homeowner further represents and warrants that the property will be the Homeowner's principal place of residence.

10.  If Rensselaer County Housing Resources, Inc. incurs any costs in collecting the Recapture Obligation secured by this Note and Mortgage, including but not limited to reasonable attorney fees, such costs will be added to the Recapture Obligation and will also be secured by this Note and Mortgage.

11.  The Homeowner will, within ten days after request by Rensselaer County Housing Resources, Inc. furnish Rensselaer County Housing Resources, Inc. with a statement, duly acknowledged and certified, setting forth the amount of the Recapture Obligation and whether any offsets or defenses exist against the Recapture Obligation.

12. Notices, demands or other communications required by this Note and Mortgage shall be in writing and will be delivered personally or by regular, certified, or registered mail. Notices to the Homeowner shall be delivered to the Property. Notices to Rensselaer County Housing Resources, Inc. shall be directed to the Director of Rensselaer County Housing Resources, Inc. at the address at the beginning of this Note and Mortgage. Notices shall be deemed given when actually delivered or when properly deposited with the postal service.

13. The terms, conditions and covenants of this Note and Mortgage will be governed, construed and enforced in accordance with the laws of New York State.

14. All of the terms, conditions and covenants of this Note and Mortgage will run with the land and will apply to, bind and inure to the benefit of the Homeowner and Rensselaer County Housing Resources, Inc. and their respective heirs, personal representatives, successors and permitted assigns, and all subsequent holders of this Note and Mortgage, and all subsequent owners, encumbrances, tenants and subtenants of the Property or any part thereof or interest therein, except to the extent expressly provided to the contrary herein.

15. This Note and Mortgage may not be modified, amended, changed, discharged or terminated orally, but only by an agreement in writing, in a form suitable for recording, signed by the party against whom the enforcement of the modification, amendment, change, discharge or termination is sought.

16. The Mortgage warrants and represents that the Homeowner has full power, authority and legal right to execute and deliver this Note and Mortgage and to mortgage all right, title and interest of the Homeowner in and to the Property pursuant to the terms hereof and to keep and observe all of the terms, conditions and covenants of this Note and Mortgage on the Homeowner's part to be performed. The Homeowner further represents and warrants that all of the information that the Homeowner provided to Rensselaer County Housing Resources, Inc. or to others for the purpose of determining the Homeowner's eligibility for participation in the Program was and is true and correct.

17. If there is more than one Homeowner each will be separately liable. The words "Homeowner" and "Rensselaer County Housing Resources, Inc." will include their heirs, executors, administrators, successors and permitted assigns. If there is more than one Homeowner the word "Homeowner" used in this Note and Mortgage will be read as if written in the plural.

18. The parties acknowledge that Rensselaer County Housing Resources, Inc. is responsible for monitoring the ongoing compliance with the terms of the Program. In pursuance thereof Rensselaer County Housing Resources, Inc., or its designee, will, from time to time request certifications or other documentation from the Homeowner. The Homeowner agrees to fully and completely cooperate with these requests in a timely manner.

19. The Homeowner agrees that the Premises shall be used only for residential purposes and that absolutely no commercial use may be made of the Premises.

The Homeowner states that the Homeowner(s) has read this Note and Mortgage, received a completely filled in copy of it and has duly signed this Note and Mortgage as of the date first above written.

Homeowner: _Mary LWoodad_

Homeowner: _____

STATE OF NEW YORK )
                      ) ss.:
COUNTY OF Warren )

On _Septem 2008_, before me, personally appeared, Mary L Woreland personally known to me on the basis of satisfactory evidence to be the individual (s) whose name (s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature (s) on the instrument, the individual (s), or the person upon behalf of which the individual (s) acted, executed the same.

_____
Notary Public

Matthew R. Ludemann
Notary Public - State Of New York
Reg. No. 02LU4829772
Qualified In Warren County
Commission Exp.11/30/___

R&R:
Rensselaer County Housing Resources
415 River Street
Troy, NY 12180

## RIDER RECAPTURE OBLIGATION

THIS RIDER is annexed to and hereby made a part of a Note and Mortgage made by Mary L. Woodard, as Homeowner(s) to Rensselaer County Housing Resources, Inc., New York, as Rensselaer County Housing Resources, Inc., dated the __29th__ day of **September,** 2006.

    1. In the event that the Homeowner:

        A. Sells, rents, or conveys any interest in the Property, or otherwise fails to occupy the Property as a principal place of residence, or

        B. Defaults on any of the terms and conditions of the Note and Mortgage, this Rider or on any of the Lender's loans, if any,

the Principal Amount shall become immediately due and payable in accordance with the defined payment schedule in section 3.

    2. If there are Building Code violations at the time of closing in the Property, Rensselaer County Housing Resources shall notify the Homeowner which of those violations it deems to be matters relating to the health and safety of the occupants. Health and safety issues must be remedied within six months of the closing and before occupancy. All other code violations present at the time of closing must be remedied within two years of the date of closing. The cost of all such work shall be the sole responsibility of the Homeowner. Rensselaer County Housing Resources shall inspect the Property to verify completion of work required under this Paragraph. The failure of the Homeowner to complete the work required under this Paragraph shall be an event of default requiring the immediate repayment of the Principal Amount.

    3. The homeowner will pay the debt, without interest, upon sale or other transfer of the property, in whole or in part, or any legal or equitable interest therein, or upon any "default" as hereinafter defined, whichever shall first occur, according to the following schedule:

| Payment Event Occurring on or After | But Not Later Than | Percent of Principal that will be due |
|---|---|---|
| Today | Five (5) years from today | 100.00% |
| Five (5) years from today | Six (6) years from today | 90.00% |
| Six (6) years from today | Seven (7) years from today | 80.00% |
| Seven (7) years from today | Eight (8) years from today | 70.00% |
| Eight (8) years form today | Nine (9) years from today | 60.00% |
| Nine (9) years from today | Ten (10) years from today | 50.00% |
| Ten (10) years from today | Eleven (11) years from today | 40.00% |
| Eleven (11) years from today | Twelve (12) years from today | 30.00% |
| Twelve (12) years from today | Thirteen (13) years from today | 20.00% |
| Thirteen (13) years from today | Fourteen (14) years from today | 10.00% |
| Fourteen Years from today | ------------- | 0.00% |

4.  This Note and Mortgage will be deemed of no further force and effect on the **fifteenth** anniversary of the date set forth on the first page of the Note and Mortgage, and neither party shall have any further rights or obligations under this Note and Mortgage against each other, except that, if the Homeowner has failed to fulfill the Recapture Obligation due or otherwise defaulted under the terms and conditions of this Note and Mortgage, then the security interest created by this Note and Mortgage will continue until the Recapture Obligation plus all costs of collection payable under the terms of this Note and Mortgage have been discharged by the Homeowner.  Rensselaer County Housing Resources, Inc. will, on or after such date, if the Homeowner has complied with all the requirements of this Note and Mortgage, upon written request by the Homeowner, execute a satisfaction or discharge of this Note and Mortgage.

5.  This Note and Mortgage may be assumed by any eligible Home Buyer under the terms of the Grant Agreement, as the same may be amended, subject to the prior written consent of the Mortgagee.  Notwithstanding anything contained herein to the contrary, upon the transfer of the Property to such eligible purchaser who assumes this Note and Mortgage, no sums shall be due and payable under this Note and Mortgage, the Recapture Obligation shall not come due and payable and the period of occupancy of the original homeowner for purposes of section 3 of this rider shall be tacked on to the period of occupancy of subsequent eligible purchasers assuming the note and mortgage under the Grant Agreement, with the consent of the Mortgagee, so that the percent of Recapture Obligation to be repaid shall be calculated as if the periods of occupancy of all such eligible purchasers, including the original homeowner, are aggregated.  Such calculations of the percent of Recapture Obligation to be repaid shall be adjusted to ensure that no reduction in the percent of Recapture Obligation to be repaid shall accrue during any period of vacancy and default on the provisions of this Note and Mortgage, but the Recapture Obligation shall remain as a lien on the property during such periods.

_____
Homeowner,

_____
Homeowner

R&R:
Rensselaer County Housing Resources
415 River Street
Troy, NY 12180

## SCHEDULE A

**ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND** together with the buildings and improvements thereon erected, situate on the east side of Maple Avenue, formerly called the Millertown Road, in Johnsville, Town of Pittstown, County of Rensselaer and State of New York, described as follows:

**BEGINNING** at a point in the northeast corner of Lot No. 45 as designated on a map of lands of Mrs. Geo O. Catlin made by Geo W. Finch, C.E., in April 1888, which beginning point is also in the northeast corner of land now or formerly reputedly owned by Charles Culnane, and running thence northeasterly about north 10° east 167.5 feet, more or less, to the southeast corner of a parcel of land conveyed by Alvin T. Hoag and wife to John Irving Sewell by deed dated November 1, 1906 and recorded March 4, 1907 in the Rensselaer County Clerk's Office in Book of Deeds 308 Page 263; thence North 13° 45' west along the east line of the parcel of land conveyed by Hoag and wife to said Sewell as aforesaid, and also along the east line of a parcel of land conveyed by Maud Lee Van Wert to said John I. Sewell by deed dated March 30, 1899 and recorded April 5, 1899 in the Rensselaer County Clerk's Office in Book of Deeds 266 Page 385, 91 feet more or less, to the south of line of a parcel of land conveyed by J. Irving Sewell and wife to Mary Esther Van Wirt by deed dated November 7, 1906 and recorded June 17, 1907 in the Rensselaer County Clerk's Office in Book of Deeds 310 Page 291; thence southwesterly on a course about south 80° 30' west along the south line of the parcel conveyed to Mary Esther VanWirt as aforesaid and then along the north line of a parcel of land conveyed by said Mary Esther VanWirt to said J. Irving Sewell by deed dated November 7, 1906 and recorded March 4, 1907 in said clerk's office in Book of Deeds 308 Page 262 (which two last mentioned deeds were exchanged in an agreed boundary line alteration and in which deeds this line was erroneously stated to run south 60° 30' west) a total distance of 146 feet, more or less, to a point now or formerly marked by a marble monument in the east line of said Maple Avenue, formerly Millertown Road; thence south 8° 15' west along the east line of said Maple Avenue 288.4 feet, more or less, to the northwest corner of the first above mentioned Lot No. 45, being also the north line of land now or formerly reputedly of Charles Culnane; thence north 72° 15' east along the north line of said Lot No. 45, being also along the north line of land now or formerly reputedly of Charles Culnane, a distance of 180 feet, more or less, to the place of beginning, being a parcel of land bounded northerly by land now or formerly reputedly of Mary Esther VanWirt; easterly by land now or formerly reputedly of Alvin T. Hoag; southerly by land now or formerly reputedly of Charles Culnane, and westerly by the east line of said Maple Avenue, formerly the Millertown Road.

Premises are improved by a 102 family residence only.

**Rensselaer County**
**Frank J. Merola**
**County Clerk**
**Troy, New York**

**Book: 3775**      **Page: 37**

Document Number: 2006- 00248883      Document Type: Mortgage
Recorded Date: 10/19/2006

Parties: WOODARD, MARY L      Pages Charged: 11
RENSSELAER COUNTY HOUSING RESOURCES      Pages Scanned: 12
Comment:
Recorded By: TRINITY ABSTRACT

## ** Examined and Charged as Follows **

Mortgage                    58.00
Coversheet                   3.00

Recording Fee:          61.00

| | Town | Serial # | Consideration |
|---|---|---|---|
| Tax-Mortgage | 225.00 PITTSTOWN | CX 5683 | 20,000.00 |
| Basic | 100.00 | | |
| Local | 50.00 | | |
| Additional | 25.00 | | |
| Special Additional | 50.00 | | |
| Transfer | 0.00 | | |
| Tax Fee: | 225.00 | | |

## ** DO NOT REMOVE **

## ** This Page is Part of the Document **

I hereby certify that the within and foregoing was recorded in the Clerk's Office for:

File Information
Document Number: 2006- 00248883
Recorded Date: 10/19/2006  06:16 P
Receipt Number: 327552

Mail Back
RENS COUNTY HOUSING
415 RIVER ST

TROY NY 12180-



Frank J. Merola
Rensselaer County Clerk

# NOTE AND MORTGAGE

Doc#: 00248883
Bk: 3775 Pg: 38

**THIS NOTE AND MORTGAGE** is made the **29th** day of **September 2006** between **Mary L. Woodard** and **RENSSELAER COUNTY HOUSING RESOURCES, INC.**
**WORDS USED OFTEN IN THIS DOCUMENT**

(A) "Mortgagor(s)." "**Mary L. Woodard**" residing at "**P.O. Box 305 Schaghticoke, NY**" will sometimes be called "Borrower" or Mortgagor" and sometimes simply "I" or "Me".

(B) "Mortgagee." Rensselaer County Housing Resources will be called "Mortgagee" or "Lender". Mortgagee is a not-for-profit corporation, which exists under the laws of the State of New York. Mortgagee's address is 415 River Street in the city of Troy, Rensselaer County New York.

(C) "Property." The property that is described below in the section titled "Description of the Property", will be called the "Property".

(D) "Sums secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the sums secured".

## PROMISE TO PAY – TERMS AND CONDITIONS

Mortgagor promises to pay Mortgagee the sum of "**$ 20,000.00**" DOLLARS without interest, subject to the following terms:

1. The Mortgagor hereby acknowledges the mortgagee has provided funds in this principal amount, under the Community Development Block Grant Program of the US Dept. of Housing and Urban Development (the "Program") as funds to be held in trust and to be used solely in connection with the acquisition of the Property. The Mortgagee is administering this program on behalf of the County of Rensselaer.

The mortgagor understands that the principal amount represents a portion of the cost of the acquisition of the Property and hereby agrees to the recapture of such amount as may hereinafter be required of the mortgagor.

2. The Note and Mortgage will remain in effect for 15 (fifteen) years and shall mature on **September 29 , 2021** and shall be subject to a 15(fifteen) year recapture term. Said 15(fifteen) year recapture term shall commence following the closing of the subject property.

3. If at any time the Mortgagor transfers or sells the secured property within the 15(fifteen)-year recapture term of the grant, the grant balance will become immediately due and payable. The recapture repayment shall be pro-rated according to the accompanying Rider Recapture Obligation

4. If at any time the Mortgagors transfer the secured property, rent, or otherwise fail to occupy and maintain the secured property as their principal residence during the 15(fifteen) year term of this Note and Mortgage, the outstanding balances of this Note and Mortgage will be immediately due and paid in full except, however, if this Note and Mortgage is assumed in writing by another eligible participant as determined by the Mortgagee herein. Continued occupancy, as a principal residence shall be monitored by annual certified mailings or by any other method undertaken by the Mortgagee. Mortgagor agrees to fully and completely cooperate with Mortgagee's request for certification or other documents needed by Mortgagee to monitor compliance with the terms of the Program.

5. Mortgagors will not be required to make any monthly payments during the term of this Note and Mortgage so long as Mortgagors occupy the secured property as their principal residence and comply with all other terms and conditions of this Note and Mortgage.

6. If this Note and Mortgage is placed in the hands of an attorney for collection before or after maturity, there shall be added to the outstanding principal due and owing, a reasonable sum for attorney's fees.

7. If more than one person signs this Note and Mortgage as a Mortgagor, each person is fully and personally obligated to keep all of the promises made in this Note and Mortgage. The Mortgagee may enforce its right under this Note and Mortgage against each person individually or against all mortgagors together. This means that one of the mortgagors may be required to pay all of the amounts owed under this Note and Mortgage.

8. Prior to the execution of this Note and Mortgage, the property was inspected by the Mortgagee's Rehab Specialist who conducted a HQS (Federal Housing Quality Standards) whole house inspection. The following HQS defects were noted by the Rehab Specialist and must be corrected within six (6) months of the signing of this Note and Mortgage:

NONE

Further, the following HQS or local building code violations were noted by the Rehab Specialist and these violations must be corrected within two (2) years of the signing of this Note and Mortgage.

NONE

If the above corrections are not completed by the date specified above and/or to the satisfaction of the Mortgagee, the Mortgagor shall be in default of this Note and Mortgage requiring immediate payment in full of the outstanding principal balance and Mortgagee shall be entitled to exercise its rights provided for herein at Paragraph 15.

9. This Note and Mortgage is subordinate to a first Note and Mortgage executed simultaneously herewith from "**Mary L. Woodard**", Mortgagor, to "**USDA Rural Development**" Lender. Mortgagor shall be obligated to make timely monthly payments under terms of that first Note and Mortgage. In the event Mortgagor fails to make any payment on the Lender's first Note and Mortgage within sixty (60) days of the date that such payment was due, the Mortgagor shall be considered in default of this second Note and Mortgage with Rensselaer County Housing Resources and the principal amount still due and owing on this second Note and Mortgage will become due and payable in full immediately.

10. This Loan is not assumable without prior written approval of the Mortgagee, which approval will not be unreasonably withheld in the sole discretion of the Mortgagee. A new purchaser may assume the principal amount, however, if they meet the requirements of the CDBG Program, including, but not limited to:

    a) the new owner is income eligible as defined in the Program or any other applicable program governing this Note and Mortgage; and

    b) the new owner agrees to occupy the property as their principal place of residence and agrees in writing to be bound by the terms and conditions of the Program and this Note and Mortgage; and

    c) The sale price does not exceed an amount affordable to a household with an income at or below 80% of area median income, and/or as permitted by the U.S. Department of Housing and Urban Development and the New York State Division of Housing and Community Renewal.

11. All the restrictions, limitations, and demands set forth hereinabove relating to the affordable housing program under the CDBG program, excepting Provision #9 (subordination clause), shall automatically and permanently terminate upon foreclosure, the execution of a deed-in-lieu of foreclosure, or assignment of the insured mortgage to HUD.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Mortgagee subject to the terms of this Note and Mortgage. This means that by signing this Note and Mortgage, I am giving Mortgagee those rights that are stated in this Note and Mortgage and also those rights that the law gives to mortgagees who hold mortgages on real property. I am giving Mortgagee these rights to protect Mortgagee from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Mortgagee as stated above in the Note.

(B) Pay any amounts that Lender spends under Paragraphs 2 and 6 of this Note and Mortgage to protect the value of the Property and Mortgagee's rights in the Property, and

(C) Keep all of my other promises and agreements under this Note and Mortgage.

## DESCRIPTION OF THE PROPERTY

.I give Mortgagee rights in the Property described in (A) through (G) below:

(A) The Property which is located at " **1442 Johnsonville Road Johnsonville** ", This Property is in Rensselaer County. It has the following legal description: SEE SCHEDULE A ATTACHED.

This mortgage is on property principally improved by a one family residence only. Request for exemption is hereby made pursuant to Section 253(b) of the Tax Law of the State of New York.

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this Section;

(D) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as "easements and appurtenances attached to the Property";

(E) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section;

(F)  All right, title and interest but not obligation, of the Mortgagor in and to all leases and other agreements affecting the use or occupancy of the Property, and the rents, issues and profits of the Property. This provision will not be construed as providing the Mortgagee's consent to any lease of the property;

(G)  All of the rights and property described in subparagraphs (B) through (F) of this section that I acquire in the future; and

(H) All replacements of or additions to the Property described in subparagraphs (B) through (G) of this section.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Note and Mortgage contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary, to a limited extent, in different parts of the country. My promises and agreements are stated in "plain language".

## COVENANTS

I promise and I agree with Mortgagee as follows:

### 1.  BORROWER'S PROMISE TO PAY

· I will pay to Mortgagee on time the amounts due under the Note and Mortgage as set forth in the terms above.

### 2.  MONTHLY PAYMENTS FOR TAXES AND INSURANCE

I will pay in a timely manner all amounts necessary to pay for real estate taxes, school taxes, assessments, water frontage charges and other similar charges, sewer rents, leasehold payments or ground rents (if any), hazard or property insurance covering the Property and flood insurance (if any).

### 3.  BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments, water frontage charges and other similar charges, sewer rents, and any other charges and fines that may be imposed on the Property and that may be superior to this Note and Mortgage.

I will promptly pay or satisfy all liens against the Property that may be superior to this Note and Mortgage. However, this Security Instrument does not require me to satisfy a superior lien if: (A) in good faith, I argue or defend against the superior lien in any lawsuit so that, during the lawsuit, the superior lien may not be enforced; or (B) I secure from the holder of that other lien an agreement, approved in writing by Mortgagee, that the lien of this Security Instrument is superior to the lien held by that person. If Mortgagee determines that any part of the Property is subject to a superior lien, Mortgagee may give Borrower a notice identifying the superior lien. Mortgagor shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

## 4. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE OR PROPERTY INSURANCE

I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located in the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies. The insurance must be in the amounts and for the periods of time required by Mortgagee. I may choose the insurance company. If I do not maintain the insurance coverage described above, Mortgagee may obtain insurance coverage to protect Mortgagee's rights in the Property in accordance with Paragraph 7 below.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Mortgagee. The form of all policies and renewals must be acceptable to Mortgagee.

If there is a loss or damage to the Property, I will notify the insurance company and Mortgagee. If I do not promptly prove to the insurance company that the loss or damage occurred, then Mortgagee may do so.

The amount paid by the insurance company called "proceeds". The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; (B) the use of the proceeds for that purpose would lessen the protection given to Mortgagee by this Security Instrument; or (C) Mortgagee and I have agreed in writing not to use the proceeds for that purpose. If repair or restoration is not economically feasible or if it would lessen Mortgagee's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Mortgagee under the Note and under this Security Instrument. If any of the proceeds remain after the amount that I owe to Mortgagee has been paid in full, the remaining proceeds will be paid to me.

If Mortgagee acquires the Property under Paragraph 21 below, all of my rights in the insurance policies will belong to Mortgagee. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Mortgagee or sold will belong to Mortgagee. However, Mortgagee's rights in those proceeds will not be greater than the sums secured immediately before the Property is acquired by Mortgagee or sold.

## 5. BORROWER'S OBLIGATION TO OCCUPY THE PROPERTY AND TO MAINTAIN AND PROTECT THE PROPERTY

(A) Borrower's Obligation to Occupy the Property
   I will occupy the Property and use the Property as my principal residence. I will continue to occupy the Property and to use the Property as my principal residence for the full term of this Note and Mortgage.

(B) Borrower's Obligation to Maintain and Protect the Property
   I will keep the Property in good repair. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate.

## 6. MORTGAGEE'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Note and Mortgage, or (B) someone, including me, begins legal proceeding that may significantly affect Mortgagee's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or forfeiture, or to enforce laws regulations), Mortgagee may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Mortgagee's actions may include appearing in court, paying reasonable attorney's fees and entering on the Property to make repairs. Although Mortgagee may take action under this Paragraph 6, Mortgagee does not have to do so.

I will pay to Mortgagee any amounts, which Mortgagee spends under this Paragraph 6. I will pay those amounts to Mortgagee when Mortgagee sends me a notice requesting that I do so. This Note and Mortgage will protect Mortgagee in case I do not keep this promise to pay those amounts.

## 7. MORTGAGEE'S RIGHTS TO INSPECT THE PROPERTY

Mortgagee may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Mortgagee must give me notice stating a reasonable purpose for the inspection.

## 8. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY

A taking of property by any government authority by eminent domain is known as "condemnation". I give to Mortgagee my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other government taking of the Property; and (B) to proceeds from sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Mortgagee.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Mortgagee has been paid in full the remaining proceeds will be paid to me. Unless Mortgagee and I agree otherwise in writing, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking either is equal to, or greater than, the amount of the Sums Secured immediately before the taking, the amount that I owe to Mortgagee will be reduced only by the amount of proceeds multiplied by a fraction. That fraction is follows: (A) the total amount of the Sums Secured immediately before the taking divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

Unless the Mortgagee and I agree otherwise in writing or unless the law requires otherwise, if only a part of the property is taken and the fair market value of the Property immediately before the taking is less then the amount of the Sums Secured immediately before the taking, the proceeds will be used to reduce the Sums Secured.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Mortgagee stating that a governmental authority has offered to make a payment or to settle a claim for damages, Mortgagee has the authority to collect the proceeds. Mortgagee may then uses the proceeds to repair or restore the Property or to reduce the Sum Secured. The 30 day period will begin when the notice is given.

## 9. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Note and Mortgage will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above title "Description of the Property". A notice will be given to me at a different address if I give Mortgagee a notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Mortgagee's address stated in subparagraph (B) of the section above titled "Words Used Often In This Document" A notice will be mailed to Mortgagee at a different address if Mortgagee gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 9 or of applicable law.

## 10. LAW THAT GOVERNS THIS SECURTIY INSTUMENT

This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Mortgage or of the Note conflicts with the law, all other terms of this security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Note, which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

## 11. BORROWER'S COPY

I will be given one conformed copy of the Note and Mortgage.

## 12. BORROWER'S RIGHT TO HAVE MORTGAGEE'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED

If payment under this Note and Mortgage becomes due to the Mortgagee as a result of my failure to occupy or own the secured property as set forth above, I may have the right to have enforcement of this Security Instrument discontinued. I will have this right at any time before sale of the Property under any power of sale granted by this Security Instrument or at any time before a judgment has been entered enforcing this Security Instrument if I meet the following conditions:

    (A) I pay to Mortgagee the full amount that then would be due under this Note and Mortgage as if immediate payment had never been required; and

    (B) I correct my failure to keep any of my other promises or agreements made in this Note and Mortgage; and

    (C) I pay all of Mortgagee's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees; and

    (D) I do whatever Mortgagee reasonably requires to assure that Mortgagee's rights in the Property, Mortgagee's rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

If I fulfill all of the conditions in this Paragraph 12, then this Note and Mortgage will remain in full effect.

## 13. NOTE HOLDERS'S RIGHT TO SELL THE NOTE OR AN INTEREST IN THE NOTE; BORROWER'S RIGHT TO NOTICE OF CHANGE OF LOAN SERVICER

The Note and Mortgage, or an interest in the Note and Mortgage, may be sold one or more times. I may not receive any prior notice of these sales.

## 14. CONTINUATION OF BORROWER'S OBLIGATION TO MAINTAIN AND PROTECT THE PROPERTY

The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection are called "Environmental Laws". I will not do anything affecting the Property that violates Environmental Laws, and I will not allow anyone else to do so.

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Paragraph 14. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Laws and the substances considered hazardous for purposes of this Paragraph 14 are called "Hazardous Substances".

I will not permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property, and I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substances on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residence use and maintenance of the Property, and I may use or store these small quantities on the Property. In addition, unless the law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

If I know of any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substances or Environmental Laws, I will promptly notify the Lender in writing. If the government notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substances affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws.

## 15. MORTGAGEE'S RIGHTS IF MORTGAGOR FAILS TO KEEP PROMISES AND AGREEMENTS

Except as provided in Paragraph 12 above, if all of the conditions stated in subparagraphs (A), (B) and (C) of this Paragraph 15 are met, Mortgagee may require that I pay immediately the entire amount remaining unpaid under the

Note and Mortgage.  Mortgagee may do this without making any further demand for payment.  This requirement is called "immediate payment in full".

If mortgagee requires immediate payment in full, Mortgagee may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold.  At this sale Mortgagee or another person may acquire the Property.  This is known as "foreclosure and sale".  In any lawsuit for foreclosure and sale, Mortgagee will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount I owe Mortgagee, which fees shall become part of the Sums Secured.

Mortgagee may require immediate payment in full under this Paragraph 15 only if all of the following conditions are met:

(A)  I fail to keep any promise or agreement made in this Note and Mortgage including the promises to pay when due the Sums Secured.

(B)  Mortgagee sends to me, in the manner described in paragraph 9 above, a notice that states:
      (i) The promise or agreements that I failed to keep;
      (ii)The action that I must take to correct that default;
      (iii) A date by which I must correct the default.  That date must be at least 30 days from the date, which the notice is given;
      (iv) That if I do not correct the default by the date stated in the notice, Mortgagee may require immediate payment in full, and Lender or another person may acquire the Property by means of foreclosure and sale;
      (v) That if I meet the conditions stated in Paragraph 12 above, I will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and
      (vi) That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument and to present any other defenses that I may have.

(C)  I do not correct the default stated in the notice from Mortgagee by the date stated in that notice.

## 16.  MORTGAGEE'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT

When Mortgagor has been paid all amounts due under this Note and Mortgage, Mortgagee will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied.  I will not be required to pay Mortgagee for the discharge, but I will pay all costs of recording the discharge in the proper official records.

## 17.  AGREEMENTS ABOUT NEW YORK LIEN LAW

I will receive all amounts lent to me by Mortgagee subject to the trust fund provisions of Section 13 of the New York Lien Law.

## 18.  CORRECTIVE DOCUMENTS

Mortgagor shall within seven (7) days of the request by Mortgagee re-execute any document or instrument signed in connection with this Mortgage loan or execute any document or instrument that, in Mortgagee's sole discretion, ought to have been signed at or before the closing of the loan, or which was incorrectly drafted and/or signed. Mortgagor irrevocably authorizes Mortgagee to record any such document or instrument and agrees to pay for the cost of such recording or filing

## 19.  NO RELIANCE ON MORTGAGE

Borrower affirms that it is not relying on the fact that Lender has extended  this Mortgage or loan as evidence of the value of the property or as evidence of good condition/or good title of the mortgaged  premises.

## 20. INVALID PROVISION

If any provision of the Mortgage or this Rider would be invalid under applicable law, then such provision shall be deemed to be modified to the extent necessary to render it valid while most nearly preserving its original intent; no provision of the Mortgage or this Rider shall be affected by another provision of either or both being held invalid.

## 21. NO WAIVER OR ESTOPPEL

No failure by Lender to exercise, no delay in exercising and no course of dealing with respect to any right under the Mortgage of this Rider shall operate as a waiver of such right; nor shall any single or partial exercise of any right under the Mortgage or this Rider preclude any other or further exercise thereof or the exercise of any other right or constitute an estoppel of any Lender's rights. The remedies herein provided are cumulative and not exclusive of any other remedies provided by law.

## 22. SUBORDINATION

This Note and Mortgage is subject and subordinate to a prior first mortgage in the amount of **"$        .00"** dated **September 29, 2006**, and executed by **"Mary L. Woodard"** as Mortgagor(s), to **"USDA Rural Development"** its successors and/or assigns, as First Mortgagee, to be recorded in the Rensselaer County Clerk's Office immediately prior to this Note and Mortgage.

Mortgagor warrants and represents that the Mortgagor has full power, authority and legal rights to execute and deliver this Note and Mortgage and to mortgage all right, title and interest of the Mortgagor in and to the property pursuant to the terms hereof and to observe all of the terms, conditions and covenants of this Note and Mortgage on the Mortgagor's part to be performed. The Mortgagor further warrants that all of the information that the Homeowner provided to the Mortgagee or to others for the purpose of determining the Mortgagor's eligibility for participation in this Program was and is true and correct.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in all pages of this Note and Mortgage.

Witnesses:

_____ (Seal)
Mortgagor

_____ (Seal)
Mortgagor

STATE OF NEW YORK )
COUNTY OF Warren )SS:

On this ____ day of _____ 2006 before me, the undersigned, personally came _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or person on behalf of which the individual(s) acted, executed the instrument.

Matthew R. Ludemann
Notary Public - State Of New York
Reg. No. 02LU4829772
Qualified In Warren County
Commission Exp.11/30/____

**R & R:**
**Rensselaer County Housing Resources**
**415 River Street**
**Troy, NY 12180**

RIDER

RECAPTURE OBLIGATION

THIS RIDER is annexed to and hereby made a part of a Note and Mortgage made by _Mary L. Woodard_ as Homeowner(s) to Rensselaer County Housing Resources, Inc., New York, as Rensselaer County Housing Resources, Inc., dated the _29th_ day of September _2006._

1. In the event that the Homeowner:

    A. Sells, rents, or conveys any interest in the Property, or otherwise fails to occupy the Property as a principal place of residence, or

    B. Defaults on any of the terms and conditions of the Note and Mortgage, this Rider or on any of the Lender's loans, if any,

the Principal Amount shall become immediately due and payable in accordance with the defined payment schedule in section 3.

2. If there are Building Code violations at the time of closing in the Property, Rensselaer County Housing Resources shall notify the Homeowner which of those violations it deems to be matters relating to the health and safety of the occupants. Health and safety issues must be remedied within six months of the closing and before occupancy. All other code violations present at the time of closing must be remedied within two years of the date of closing. The cost of all such work shall be the sole responsibility of the Homeowner. Rensselaer County Housing Resources shall inspect the Property to verify completion of work required under this Paragraph. The failure of the Homeowner to complete the work required under this Paragraph shall be an event of default requiring the immediate repayment of the Principal Amount.

3. The homeowner will pay the debt, without interest, upon sale or other transfer of the property, in whole or in part, or any legal or equitable interest therein, or upon any "default" as hereinafter defined, whichever shall first occur, according to the following schedule:

| Payment Event Occurring on or After | But Not Later Than | Percent of Principal that will be due |
|---|---|---|
| Today | Five (5) years from today | 100.00% |
| Five (5) years from today | Six (6) years from today | 90.00% |
| Six (6) years from today | Seven (7) years from today | 80.00% |
| Seven (7) years from today | Eight (8) years from today | 70.00% |
| Eight (8) years form today | Nine (9) years from today | 60.00% |
| Nine (9) years from today | Ten (10) years from today | 50.00% |
| Ten (10) years from today | Eleven (11) years from today | 40.00% |
| Eleven (11) years from today | Twelve (12) years from today | 30.00% |
| Twelve (12) years from today | Thirteen (13) years from today | 20.00% |
| Thirteen (13) years from today | Fourteen (14) years from today | 10.00% |
| Fourteen Years from today | ------------- | 0.00% |

4. This Note and Mortgage will be deemed of no further force and effect on the **fifteenth** anniversary of the date set forth on the first page of the Note and Mortgage, and neither party shall have any further rights or obligations under this Note and Mortgage against each other, except that, if the Homeowner has failed to fulfill the Recapture Obligation due or otherwise defaulted under the terms and conditions of this Note and Mortgage, then the security interest created by this Note and Mortgage will continue until the Recapture Obligation plus all costs of collection payable under the terms of this Note and Mortgage have been discharged by the Homeowner.  Rensselaer County Housing Resources, Inc.  will, on or after such date, if the Homeowner has complied with all the requirements of this Note and Mortgage, upon written request by the Homeowner, execute a satisfaction or discharge of this Note and Mortgage.

5. This Note and Mortgage may be assumed by any eligible Home Buyer under the terms of the Grant Agreement, as the same may be amended, subject to the prior written consent of the Mortgagee.  Notwithstanding anything contained herein to the contrary, upon the transfer of the Property to such eligible purchaser who assumes this Note and Mortgage, no sums shall be due and payable under this Note and Mortgage, the Recapture Obligation shall not come due and payable and the period of occupancy of the original homeowner for purposes of section 3 of this rider shall be tacked on to the period of occupancy of subsequent eligible purchasers assuming the note and mortgage under the Grant Agreement, with the consent of the Mortgagee, so that the percent of Recapture Obligation to be repaid shall be calculated as if the periods of occupancy of all such eligible purchasers, including the original homeowner, are aggregated.  Such calculations of the percent of Recapture Obligation to be repaid shall be adjusted to ensure that no reduction in the percent of Recapture Obligation to be repaid shall accrue during any period of vacancy and default on the provisions of this Note and Mortgage, but the Recapture Obligation shall remain as a lien on the property during such periods.

*Mary L Wooden*
Homeowner,

_____
Homeowner

**R&R:**
**Rensselaer County Housing Resources**
**415 River Street**
**Troy, NY 12180**

## SCHEDULE A

**ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND** together with the buildings and improvements thereon erected, situate on the east side of Maple Avenue, formerly called the Millertown Road, in Johnsville, Town of Pittstown, County of Rensselaer and State of New York, described as follows:

**BEGINNING** at a point in the northeast corner of Lot No. 45 as designated on a map of lands of Mrs. Geo O. Catlin made by Geo W. Finch, C.E., in April 1888, which beginning point is also in the northeast corner of land now or formerly reputedly owned by Charles Culnane, and running thence northeasterly about north 10° east 167.5 feet, more or less, to the southeast corner of a parcel of land conveyed by Alvin T. Hoag and wife to John Irving Sewell by deed dated November 1, 1906 and recorded March 4, 1907 in the Rensselaer County Clerk's Office in Book of Deeds 308 Page 263; thence North 13° 45' west along the east line of the parcel of land conveyed by Hoag and wife to said Sewell as aforesaid, and also along the east line of a parcel of land conveyed by Maud Lee Van Wert to said John I. Sewell by deed dated March 30, 1899 and recorded April 5, 1899 in the Rensselaer County Clerk's Office in Book of Deeds 266 Page 385, 91 feet more or less, to the south of line of a parcel of land conveyed by J. Irving Sewell and wife to Mary Esther Van Wirt by deed dated November 7, 1906 and recorded June 17, 1907 in the Rensselaer County Clerk's Office in Book of Deeds 310 Page 291; thence southwesterly on a course about south 80° 30' west along the south line of the parcel conveyed to Mary Esther VanWirt as aforesaid and then along the north line of a parcel of land conveyed by said Mary Esther VanWirt to said J. Irving Sewell by deed dated November 7, 1906 and recorded March 4, 1907 in said clerk's office in Book of Deeds 308 Page 262 (which two last mentioned deeds were exchanged in an agreed boundary line alteration and in which deeds this line was erroneously stated to run south 60° 30' west) a total distance of 146 feet, more or less, to a point now or formerly marked by a marble monument in the east line of said Maple Avenue, formerly Millertown Road; thence south 8° 15' west along the east line of said Maple Avenue 288.4 feet, more or less, to the northwest corner of the first above mentioned Lot No. 45, being also the north line of land now or formerly reputedly of Charles Culnane; thence north 72° 15' east along the north line of said Lot No. 45, being also along the north line of land now or formerly reputedly of Charles Culnane, a distance of 180 feet, more or less, to the place of beginning, being a parcel of land bounded northerly by land now or formerly reputedly of Mary Esther VanWirt; easterly by land now or formerly reputedly of Alvin T. Hoag; southerly by land now or formerly reputedly of Charles Culnane, and westerly by the east line of said Maple Avenue, formerly the Millertown Road.

premises are improved by A one or
Two family dwelling only — Request
for exemption is being made —

SUPREME COURT OF THE STATE OF NEW YORK COUNTY          Index No. 2018-261770
OF RENSSELAER

                                                       Instr # 2019-78484
                                                       Bk: 258   Pg: 295
──────────────────────────────────────────            Received
CAVALRY SPV I, LLC, as ASSIGNEE OF  SYNCHRONY          STATEMENT FOR JUDGMENT 04/15/2019  10:27:00 AM
BANK formerly known as GE CAPITAL RETAIL BANK                         Frank J Merola
                         , Plaintiff                   Failure to Appear or Plead Rensselaer County
                                                                          County Office
                                                                          Clerk: TR
                    -against-

                                                       An action against a natural person based
                                                       upon non-payment of a contractual
MARY HALE                                              obligation.

                         , Defendant(s)
                                                       Judgment Rendered in Favor of CAVALRY
                                                       SPV I, LLC, as ASSIGNEE OF  SYNCHRONY
──────────────────────────────────────────            BANK formerly known as GE CAPITAL RETAIL
                                                       BANK Plaintiff, With Offices at 500
                                                       Summit Lake Dr., Suite 400, Valhalla,
                                                       NY, 10595


Amount requested in Complaint ................................     $1,183.23
Interest .....................................................     N/A
Less amounts previously paid .................................     $.00
                                        SUB TOTAL:                 $1,183.23

Costs allowed by Statute .....................................     $200.00
Service of Summons and Complaint .............................     $75.00
Filing of Summons and Complaint ..............................     $210.00
Filing of Judgment ...........................................     $45.00
Prospective Sheriff's or Marshal's Fees ......................     $40.00
Military Affidavit ...........................................     N/A

                                        COSTS TAXED AT:            $570.00
                                        GRAND TOTAL:               $1,753.23


STATE OF NEW YORK
COUNTY OF WESTCHESTER
        The undersigned, an attorney at law in the State of New York, affirms, deposes, and
says:  that she/he is the attorney of record for the Plaintiff herein; that the
disbursements here specified are correct and true, and have been or will necessarily be
made or incurred herein and are reasonable in amount; Defendant(s) have failed to appear,
answer or move, and the time to do so has expired; Plaintiff is entitled to judgment by
default; that the plaintiff waives its right to attorney fees and its Account Stated cause
of action.  Pursuant to the affidavits of service on file herein deponent alleges that
defendants are not in any military services.  The foregoing affirmations are made under
penalties of perjury.  The presentation of this judgment and all accompanying papers is
hereby certified to be not frivolous as defined in 22 NYCRR 130-1.1-a.

                        Dated: February 28, 2019
──────────────────────────────
                        Darin S. Portnoy, Esq. / Joel S. Schneck, Esq.
                        Schachter Portnoy, L.L.C.
                        500 Summit Lake Drive Suite 4A
                        Valhalla, NY 10595-1340
                        Phone:  888/841-6574
                        Attorney for Plaintiff
                        File No. L1805003

JUDGMENT entered this ___15ᵗʰ___ day of _April_____, 2019.
The SUMMONS and COMPLAINT in this action having been served on:

MARY HALE - 1442 JOHNSONVILLE RD, JOHNSONVILLE NY 12094

the Defendant(s) herein, and the time of said Defendant(s) to Appear or Answer having
expired, and said Defendant(s) not having appeared or answered herein.
**NOW, ON MOTION OF** Schachter Portnoy, L.L.C. 500 Summit Lake Drive Suite 4A Valhalla, NY
10595-1340 attorney for the Plaintiff-Judgment Creditor, it is hereby
**ADJUDGED,** that  CAVALRY SPV I, LLC, as ASSIGNEE OF  SYNCHRONY BANK formerly known as GE
CAPITAL RETAIL BANK 500 Summit Lake Dr., Suite 400, Valhalla, NY, 10595, the
Plaintiff-Judgment Creditor, address stated above, do recover of the above named
Defendant(s)-Judgment Debtor, address stated above, the sum of $1,183.23 the amount
claimed with interest, and $570.00, costs and disbursements, amounting in all to the sum
of $1,753.23 and that Plaintiff-Judgment Creditor have execution therefore.

CLERK

EXHIBIT D

**USDA**

**United States Department of Agriculture**

Rural Development
Business Center

Chief Financial Officer

Office of the National
Financial and
Accounting Operations
Center

4300 Goodfellow
Boulevard

St. Louis, MO 63120

September 25, 2019

Mary Hale
1442 Johnsonville Road
Johnsonville, NY 12094

███████████████████

Property Address: 1442 Johnsonville Road, Johnsonville, NY 12094

Dear Mary Hale:

██████████
██████

## "YOU MAY BE AT RISK OF FORECLOSURE.   PLEASE READ THE FOLLOWING NOTICE CAREFULLY"

As of September 25, 2019, your home loan is 727 days and $140,034.61 dollars in default.   Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home.

  Attached to this notice is a list of government approved housing counseling agencies in your area which provide free counseling.   You can also call the NYS Office of the Attorney General's Homeowner Protection Program (HOPP) toll-free consumer hotline to be connected to free housing counseling services in your area at ████████████████ ████████), or visit their website at http://www.aghomehelp.com/. A statewide listing by county is also available at http://www.dfs.ny.gov/consumer/mortg nys np counseling agencies.htm. Qualified free help is available; watch out for companies or people who charge a fee for these services.

Housing counselors from New York-based agencies listed on the website above are trained to help homeowners who are having problems making their mortgage payments and can help you find the best option for your

USDA is an equal opportunity provider and employer.

If you wish to file a Civil Rights program complaint of discrimination, complete the USDA Program Discrimination Complaint Form (PDF), found online at http://www.ascr.usda.gov/complaint_filing_cust.html, or at any USDA office, or call (866) 632-9992 to request the form. You may also write a letter containing all of the information requested in the form. Send your completed complaint form or letter to us by mail at U.S. Department of Agriculture, Director, Office of Adjudication, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, by fax (202) 690-7442 or email at program.intake@usda.gov.

situation.   If you wish, you may also contact us directly at ███████████   and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve a resolution.   The longer you wait, the fewer options you may have.

If you have not taken any actions to resolve this matter within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at (show number) or visit the Department's website at (show web address).

IMPORTANT:  You have the right to remain in your home until you receive a court order telling you to leave the property.   If a foreclosure action is filed against you in court, you still have the right to remain in the home until a court orders you to leave.   You legally remain the owner of and are responsible for the property until the property is sold by you or by order of the court at the conclusion of any foreclosure proceedings.   This notice is not an eviction notice, and a foreclosure action has not yet been commenced against you.

## HUD-Approved housing counseling agencies located in New York

| COUNTY | AGENCY | ADDRESS | CONTACT INFO | NOTES |
|---|---|---|---|---|
| Albany | Affordable Housing Partnership | 255 Orange St. Albany, NY 12210 | 518-434-1730 | HOPP Also serves surrounding areas |
| | Albany County Rural Housing Alliance | 24 Martin Road Voorheesville, NY 12186 | 518-765-2425 | HOPP Also serves surrounding areas |
| | United Tenants of Albany | 33 Clinton Ave. Albany, NY 12207 | 518-436-8997 | HOPP For tenants whose buildings are in the process of foreclosure or have been foreclosed on |
| | Better Neighborhoods, Inc. | 986 Albany St. Schenectady, NY 12307 | 518-372-6469 | HOPP |
| | Clearpoint Credit Counseling Solutions | 2 Computer Drive West Albany, NY 12205 | 1-800-750-2227 | Formerly known as Consumer Credit Counseling Service |
| | NYS Office For People With Developmental Disabilities (OPWDD) | 44 Holland Ave. Albany, NY 12229 | 518-473-1973 | Serving all NYS residents with developmental disabilities and their families |
| Allegany | ACCORD | 84 Schuyler St. Belmont, NY 14813 | 585-268-7605 | HOPP |
| | Belmont Housing Resources | 1195 Main Street Buffalo, NY 14209 | 716-884-7791 | HOPP |
| | Neighborhood Housing | 937 South Park Ave. | 716-823-3630 | Also serving |



2332121331

| | Neighborhood Housing Services of South Buffalo | 1937 South Park Ave. Buffalo, NY 14220 | 716-823-3630 | |
|---|---|---|---|---|
| Cayuga | Home Headquarters, Inc. | 990 James St., Suite 1 Syracuse NY 13203 | 315-474-1939 | HOPP. Spanish speaking staff available |
| | Clearpoint Financial Solutions | 5794 Widewaters Parkway Syracuse, NY 13214 | 1-877-412-2227 | Formerly known as Consumer Credit Counseling Service of Central NY |
| | Alternatives FCU | 125 Fulton St. Ithaca, NY 14850 | 607-216-3445 | Online service available only to members of AFCU |
| Chautauqua | Belmont Housing Resources for Western NY | 1195 Main St. Buffalo, NY 14209 | 716-884-7791 | HOPP |
| | Chautauqua Home Rehabilitation and Improvement Corp. (CHRIC) | 2 Academy St. Mayville, NY 14757 | 716-753-4650 | Spanish speaking staff available |
| | Neighborhood Housing Services of South Buffalo | 1937 South Park Ave. Buffalo, NY 14220 | 716-823-3630 | |
| Chemung | Arbor Housing and Development | 26 Bridge St. Corning, NY 14830 | 607-654-7487 | HOPP |
| | Catholic Charities of Chemung | 215 East Church St., Suite 101 Elmira, NY 14901 | 607-734-9784 | HOPP |
| | Alternatives FCU | 125 Fulton St. Ithaca, NY 14850 | 607-216-3445 | Online service available only to members of AFCU |
| Chenango | Metro Interfaith Housing Council | 21 New St., Binghamton, NY 13903 | 607-772-2766 | HOPP |
| | Clearpoint Credit | The Metro Center, 49 | 1-800-750- | |



2332121331

| | | Poughkeepsie, NY 12601 | | |
|---|---|---|---|---|
| Erie | Belmont Housing Resources | 1195 Main St. Buffalo, NY 14209 | 716-884-7791 | HOPP |
| | West Side & Black Rock Riverside NHS, Inc. | 359 Connecticut St., Buffalo, NY 14213 | Tuesdays and Wednesdays at (716) 885-2344  Thursdays and Fridays at (716) 877-3910 | HOPP |
| | Buffalo Urban League | 15 Genesee Street Buffalo, NY 14203 | (716) 250-2400 | HOPP |
| | Consumer Credit Counseling Services of Buffalo, Inc. | 40 Gardenville Parkway, Suite 300, West Seneca, NY 14224 | 1-800-926-9685 or 716-712-2060 | |
| | Neighborhood Assistance Corp. of America | 1094 Hertel Avenue Buffalo, NY 14216 | 716-834-6222 | |
| | Neighborhood Housing Services of South Buffalo | 1937 South Park Ave., Buffalo, NY 14220 | 716-823-3630 | |
| Essex | Friends of the North Country | 1 Mill St. Keeseville, NY 12944 | 518-834-9606 | HOPP |
| | Housing Assistance Program of Essex County (HAPEC) | 103 Hand Ave. Elizabethtown, NY 12932 | 518-873-6888 | HOPP |
| | Homefront Development Corp. | 568 Lower Allen St. Hudson Falls, NY 12839 | 518-747-8250 | |
| Franklin | Friends of the North Country | 1 Mill St. Keeseville, NY 12944 | 518-834-9606 | HOPP |
| | Housing Assistance Program of Essex County (HAPEC) | 103 Hand Ave. Elizabethtown, NY 12932 | 518-873-6888 | HOPP |
| | Clearpoint Credit | 215 Washington St. | 1-800-750- | |

| | | | | |
|---|---|---|---|---|
| | Clearpoint Credit Counseling Solutions | 289 Genesee St. Utica, NY 13501 | 1-800-750-2227 | |
| | Homefront Development Corp. | 568 Lower Allen St. Hudson Falls, NY 12839 | 518-747-8250 | |
| **Herkimer** | UNHS NeighborWorks Homeownership Center | 1611 Genesee Street Utica, NY 13501 | 315-724-4197 | HOPP |
| | Clearpoint Credit Counseling Solutions | 289 Genesee St. Utica, NY 13501 | 1-800-750-2227 | |
| **Jefferson** | Home Headquarters, Inc. | 990 James St., Suite 1 Syracuse NY 13203 | 315-474-1939 | HOPP Spanish speaking staff available |
| | Clearpoint Credit Counseling Solutions | 215 Washington St. Suite 005 Watertown, NY 13601 | 1-800-750-2227 | |
| **Kings** | Cypress Hills Local Dev. Corp. | 3214 Fulton St. Brooklyn, NY 11208 | 718-647-8100 | HOPP Spanish speaking staff available |
| | Pratt Area Community Council | 1224 Bedford Ave. Brooklyn, NY 11216 | 718-783-3549 ext.315 | HOPP |
| | Grow Brooklyn, Inc. | 1474 Myrtle Ave. Brooklyn, NY 11237 | 718-418-8232 ext. 206 | HOPP Spanish and Bengali speaking staff available |
| | Bridge Street Dev. Corp. | 460 Nostrand Ave. Brooklyn, NY 11216 | 718-636-7596 ext. 11 | HOPP Spanish Speaking staff available |
| | MHANY Management, Inc. | 2-4 Nevins St., Brooklyn, NY 11217 | 718-246-8080 ext.203 | HOPP Spanish speaking staff available |
| | Neighbors Helping Neighbors (NHN) | 621 Degraw St., Brooklyn, NY 11217 | 718-237-2017 ext.159 | HOPP Spanish speaking staff available |
| | Brooklyn Housing and | 415 Albemarle Rd. | 718-435-7585 | HOPP |

| | | | | available |
|---|---|---|---|---|
| | GreenPath Debt Solutions | 175 Remsen St., Suite 1102 Brooklyn, NY 11201 | 866-285-4033 | |
| | NY Commission of Human Rights-Brooklyn | 275 Livingston St. Brooklyn, NY 11217 | 718-722-3130 | Spanish speaking staff available |
| Lewis | Home Headquarters, Inc. | 990 James St., Suite 1, Syracuse NY 13203 | 315-474-1939 | HOPP |
| | Clearpoint Credit Counseling Solutions | 215 Washington St. Suite 005 Watertown, NY 13601 | 1-800-750-2227 | |
| Livingston | Consumer Credit Counseling Services of Rochester, Inc. | 1000 University Ave., Suite 900 Rochester, NY 14607 | 1-888-724-2227 | HOPP |
| | The Housing Council | 75 College Ave., 4th Floor Rochester, NY 14607 | 585-546-3700 | HOPP |
| Madison | Home Headquarters, Inc. | 990 James St., Suite 1, Syracuse NY 13203 | 315-474-1939 | HOPP Spanish speaking staff available |
| | UNHS NeighborWorks Homeownership Center | 1611 Genesee Street Utica, NY 13501 | 315-724-4197 | HOPP |
| | Community Action Program for Madison County | 3 East Main St. Morrisville, NY 13408 | 315-684-3144 | ASL trained staff available |
| | Clearpoint Credit Counseling Solutions | 289 Genesee St. Utica, NY 13501 | 1-800-750-2227 | |
| Monroe | Consumer Credit Counseling Services of Rochester, Inc. | 1000 University Ave., Suite 900 Rochester, NY 14607 | 1-888-724-2227 | HOPP |
| | Marketview Heights Association | 308 North Street Rochester, NY 14605 | 585-423-1540 | HOPP |
| | The Housing Council | 75 College Ave., 4th Floor Rochester, NY 14607 | 585-546-3700 | HOPP |



| | | | | |
|---|---|---|---|---|
| | | Heights, NY 11372 | | in NYC. Southeast Asian speaking Counselors on staff |
| | County of Nassau Economic Development, Office of Housing | 40 Main St., Suite B, Hempstead, NY 11550. | 516-571-4663 | Spanish speaking staff available. |
| | GreenPath Debt Solutions | 300 Garden City Plaza, Suite 220, Garden City, NY 11530 | 888-776-6738. | |
| New York | MHANY Management, Inc. | 2-4 Nevins St., Brooklyn, NY 11217 | 718-246-8080 ext 203 | HOPP Spanish speaking staff available |
| | Grow Brooklyn, Inc. | 1474 Myrtle Ave., Brooklyn, NY 11237. | 718-418-8232 ext. 206. | HOPP Spanish and Bengali speaking staff available |
| | Parodneck Foundation | 121 6th Ave., Suite 501 New York, NY 10013. | 212-431-9700 ext 391. | HOPP Spanish speaking staff available. |
| | AAFE Community Development Fund, Inc. | 111 Division St., New York, NY 10002. | 212-964-2288 | Chinese and Korean speaking staff available. |
| | Abyssinian Development Corp. | 2283 7th Avenue New York, NY 10030 | 646-442-6545 | |
| | Neighborhood Housing Services of NYC. | 307 West 36th St., 12th floor New York, NY 10018. | 212-519-2500 | Spanish and Creole speaking staff available. |
| | Harlem Congregations for Community Development | 2854 Frederick Douglass Blvd., New York, NY 10039. | 212-281-4887. ext. 206 or 231. | Spanish speaking staff available. |
| | West Harlem Group Assistance, Inc. | 1652 Amsterdam Ave. New York, NY 10031. | 212-862-1399. | |

| | | Rochester, NY 14607 | | |
|---|---|---|---|---|
| | Consumer Credit Counseling Services of Rochester, Inc. | 1000 University Ave., Suite 900 Rochester, NY 14607 | 1-888-724-2227 | HOPP |
| | Community Action in Self Help | 48 Water St., Lyons, NY 14489 | 315-946-6992 | HOPP Serving townships of Manchester and Phelps |
| | Keuka Housing Council | 160 Main St. Penn Yan, NY 14527 | 315-536-8707 | Seen on case by case basis with focus on senior citizens |
| **Orange** | Hudson River Housing | 291 Mill St Poughkeepsie, NY 12601 | 845-454-9288 | HOPP |
| | Orange County Rural Development Advisory Corp. | 59b Boniface Drive Pine Bush, NY 12566 | 845-713-4568 | HOPP |
| **Orleans** | Belmont Housing Resources | 1195 Main St. Buffalo, NY 14209 | 716-884-7791 | HOPP |
| | The Housing Council | 75 College Ave. 4th Floor Rochester, NY 14607 | 585-546-3700 | HOPP |
| | Consumer Credit Counseling Service of Rochester, Inc. | 1000 University Ave., Suite 900 Rochester, NY 14607 | 1-888-724-2227 | HOPP |
| **Oswego** | Home Headquarters, Inc. | 990 James St., Suite 1 Syracuse NY 13203 | 315-474-1939 | HOPP Spanish speaking staff available |
| | Fulton Community Development Agency | 125 West Broadway Fulton, NY 13069 | 315-593-7166 | |
| | Oswego Housing Development Council, Inc. | 2971 County Rte. 26 Parish, NY 13131 | 315-625-4520 | |
| | Clearpoint Credit Counseling Solutions | 5794 Widewaters Parkway Syracuse, NY 13214 | 1-800-750-2227 | |

| | Brooklyn Housing and Family Services, Inc. | 415 Albemarle Rd. Brooklyn, NY 11218. | 718-435-7585 | HOPP. Spanish and French Creole speaking staff available. |
|---|---|---|---|---|
| | NY. Commission of Human Rights- Queens | 153-01 Jamaica Ave. Jamaica, NY 11432 | 718-657-2465 | Spanish speaking staff available |
| | GreenPath Debt Solutions | 80-02 Kew Gardens Road, Suite 710 Kew Gardens, NY. 11415-3607. | 866-285-4036 | |
| | Margert Community Corporation | 325 Beach 37th Street Far Rockaway, NY. 11691 | 718-471-3724 | |
| | Queens Community House | 108-25 62nd Drive Forest Hills, NY 11375 | 718-592-5757 | |
| Rensselaer | Troy Rehabilitation and Improvement Program (TRIP). | 415 River St. Troy, NY. 12180 | 518-690-0020 | HOPP |
| | United Tenants of Albany | 33. Clinton Ave. Albany, NY 12207. | 518-436-8997 | HOPP. For tenants whose buildings are in process of being foreclosed or whose building has been foreclosed |
| | Albany County Rural Housing Alliance | 24 Martin Road Voorheesville, NY 12186. | 518-765-2425 | HOPP |
| | Affordable Housing Partnership. | 255. Orange St. Albany, NY. 12210 | 518-434-1730 | HOPP. |
| | Clearpoint Credit Counseling Solutions | 2. Computer Drive West Albany, NY 12205. | 1-800-750-2227 | Formerly known as Consumer Credit Counseling |



| | | | |
|---|---|---|---|
| | (TRIP) | | | residents of Southern Saratoga County. |
| | Better Neighborhoods, Inc. | 986 Albany St. Schenectady, NY 12307 | 518-372-6469 | HOPP |
| | Clearpoint Credit Counseling Solutions | 2 Computer Drive West Albany, NY. 12205 | 1-800-750-2227 | Formerly known as Consumer Credit Counseling Service of Central NY. |
| | Homefront Development Corp. | 568 Lower Allen St. Hudson Falls, NY 12839 | 518-747-8250 | Serving residents of Northern Saratoga County |
| Schenectady | Better Neighborhoods, Inc. | 986 Albany St. Schenectady, NY 12307 | 518-372-6469 | HOPP |
| | Affordable Housing Partnership | 255 Orange St. Albany, NY 12210 | 518-434-1730 | HOPP |
| | Albany County Rural Housing Alliance | 24 Martin Road Voorheesville, NY 12186 | 518-765-2425 | HOPP |
| | Schenectady Community Action Program (SCAP) | 913 Albany St. Schenectady, NY 12307 | 518-374-9181 | For tenants whose buildings are in process of being foreclosed or whose building has been foreclosed. |
| | Clearpoint Credit Counseling Solutions | 2 Computer Drive West Albany, NY 12205 | 1-800-750-2227 | Formerly known as Consumer Credit Counseling Service of Central NY. |

| | Resources, Inc. | East Northport, NY 11731 | 0766 | Spanish speaking staff available |
|---|---|---|---|---|
| | Community Development Corporation of Long Island | 2100 Middle Country Rd., Suite 300 Centereach NY 11720 | 631-471-1215 ext. 158 | HOPP Spanish speaking staff available |
| | Economic Opportunity Council of Suffolk, Inc. | 320 Carleton Avenue Suite 7800 Central Islip NY 11722 | 631-647-3765 x 1204 or 1205 | HOPP |
| | La Fuerza Unida, Inc. | 1 School St., Suite 302 Glen Cove, NY 11542 | 516-759-0788 | HOPP Spanish speaking staff available |
| | Long Island Housing Partnership, Inc. | 180 Oser Ave. Hauppauge, NY 11788 | 631-435-4710 | HOPP Spanish speaking staff available |
| | Long Island Housing Services, Inc. | 640 Johnson Ave., Suite 8 Bohemia, NY 11716 | 631-567-5111 x383 | HOPP Spanish speaking staff available |
| | CHHAYA | 37-43 77th St. Jackson Heights, NY 11372 | 718-478-3848 | HOPP funded for NYC Southeast Asian speaking Counselors on staff |
| | Central Islip Civic Council | 68 Wheeler Rd. Central Islip, NY 11722 | 631-348-0669 | HOPP Spanish speaking staff available |
| | Housing Help, Inc. | 91-101 Broadway, Suite 6 Greenlawn NY 11740 | 631-754-0373 | |
| | North Fork Housing Alliance | 110 South St. Greenport, NY 11944 | 631-477-1070 | |
| | Bellport, Hagerman, East Patchogue Alliance, Inc. | 1492 Montauk Highway Bellport, NY 11713 | 631-286-9236 | |

|  |  |  |  |  |
|---|---|---|---|---|
|  | Program of Essex County (HAPEC) | Elizabethtown, NY. 12932 |  |  |
|  | Albany County Rural Housing Alliance | 24 Martin Road Voorheesville, NY. 12186 | 518-765-2425 | HOPP |
|  | Clearpoint Financial Solutions | 2 Computer Drive West Albany, NY 12205 | 1-877-412-2227 | Formerly known as Consumer Credit Counseling Service of Central NY |
|  | Homefront Development Corp. | 568 Lower Allen St. Hudson Falls, NY 12839 | 518-747-8250 |  |
| Washington | Housing Assistance Program of Essex County (HAPEC) | 103 Hand Ave. Elizabethtown, NY. 12932 | 518-873-6888 | HOPP |
|  | Albany County Rural Housing Alliance | 24 Martin Road Voorheesville, NY. 12186 | 518-765-2425 | HOPP |
|  | Homefront Development Corp. | 568 Lower Allen St. Hudson Falls, NY 12839 | 518-747-8250 |  |
| Wayne | Community Action in Self Help | 48 Water St. Lyons, NY. 14489 | 315-946-6992 | HOPP |
|  | Consumer Credit Counseling Service of Rochester, Inc. | 50 Chestnut Plaza Rochester, NY. 14604 | 1-888-724-2227 | HOPP |
| Westchester | Community Housing Innovations, Inc. | 75 South Broadway, Ste 340 White Plains, NY 10601 | 914-683-1010 | HOPP |
|  | Housing Action Council | 55 South Broadway Tarrytown, NY. 10591 | 914-332-4144 | HOPP |
|  | Human Development Services of Westchester, Inc. | 28 Adee St. Port Chester, NY 10573 | 914-939-2005 | HOPP. Spanish speaking counselors available. |
|  | Westchester Residential Opportunities | 470 Mamaroneck Ave., Suite 410 | 914-428-4507 OR 877- | HOPP. Spanish and |

2332121331

## FAIR DEBT COLLECTION PRACTICES ACT NOTIFICATION

This Notice is required by the Fair Debt Collection Practices Act (the "Act"), 15 U.S.C. §1692 et seq., as amended.

Unless the consumer, within thirty days after receipt of this notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid.

If the debtor notifies the debt collector within 30 days of the receipt of this notice that the debt or any portion thereof is disputed, the debt collector will obtain a verification of the debt and a copy of the verification will be mailed to the debtor.

If you have received a discharge from the United States Bankruptcy Court, and you have not reaffirmed your liability for this debt, you are not personally liable for the underlying indebtedness owed and this notice/disclosure is for compliance and informational purposes only.

Debt collectors, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq., are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to (i) the use or threat of violence; (ii) the use of obscene or profane language; and (iii) repeated phone calls made with the intent to annoy, abuse, or harass.

If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt:

a) Supplemental security income, (SSI)

b) Social Security;

c) Public Assistance (welfare);

d) Spousal support, maintenance (alimony) or child support;

e) Unemployment benefits;

f) Disability benefits:

g) Workers' compensation benefits;

h) Public or private pensions;

i) Veterans' benefits;

j) Federal student loans, federal student grants, and federal work study funds; and

k) Ninety percent of your wages or salary earned in the last sixty days

Written request by this Act should be addressed to:

Unites States Department of Agriculture
Rural Development Business Center
4300 Goodfellow Blvd., St. Louis, MO 63120
Telephone ████████████████████████

**EXHIBIT E**



**New York State Department of Financial Services**
One State Street Plaza, New York, NY 10004

Proof of Filing Statement

To Whom It May Concern:

Section 1306 of the Real Property Actions and Proceedings Law (RPAPL) requires lenders, assignees or mortgage loan servicers servicing loans on 1-to-4 family residential properties in New York State to file certain information with the Superintendent of the Department Financial Services within three days after the mailing of a 90-Day Pre-Foreclosure Notice.

The information below pertains to a filing submitted to the Department of Financial Services as required in Section 1306 of RPAPL.  The information is presented as filed by the lender, assignee or mortgage loan servicer.

**Filer Information:**

Name                          : USDA Rural Development
Address                       : 441 South Salina St., Suite 357
                                Syracuse NY  13202

**Filing Information:**

Tracking Number               : ██████████
Mailing Date Step 1           : 25-SEP-19 12.00.00.000 AM
Mailing Date Step 2           :
Judgment Date Step 3          :
Filing Date Step 1            : 25-SEP-19 01.18.17.000 PM
Filing Date Step 1 Orig       : 25-SEP-19 01.18.17.000 PM
Filing Date Step 2            :
Filing Date Step 3            :
Owner Occupd at Jdgmnt        :
Property Type                 : 1 to 4 Family Home
Property Address              : 1442 Johnsonville Road  Johnsonville
                                NY 12094
County                        : Rensselaer
Date of Original Loan         : 29-SEP-06 12.00.00.000 AM
Amt of Original Loan          : ████████
Loan Number Step 1            : ████████
Loan Number Step 2            :
Loan Reset Frequency          :
Loan Type                     : 1st Lien
Loan Details                  : Fixed Rate
Loan Term                     : 30 Year
Loan Modification             : No Modification
Days Delinquent               : Other
Borrower's Name               : Mary  Hale
Address                       : 1442 Johnsonville Road
                                Johnsonville  12094
Borrower's Phone No           : ████████
Filing Status                 : Step 1 Incomplete-Missing Mortgagee Info

Sincerely,

New York State Department of Financial Services

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | Mary L. Woodard a/k/a Mary Hale et al |

| (b) County of Residence of First Listed Plaintiff | County of Residence of First Listed Defendant   Rensselaer |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Nicole LaBletta<br>Pincus Law Group, PLLC<br>425 RXR Plaza Uniondale, NY 11556 516-669-8902 | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question *(U.S. Government Not a Party)*

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange |
| | | | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 210 Land Condemnation<br>☒ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title 28 U.S. C, Section 1345

Brief description of cause:
Action to foreclose a mortgage

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 142,557.92

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE 01/02/2020

SIGNATURE OF ATTORNEY OF RECORD /s/Nicole B. LaBletta

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT  Waived | APPLYING IFP | JUDGE  FJS | MAG. JUDGE  TWD |
|---|---|---|---|---|

Print     Save As...     Reset

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
   United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
   United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
   Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
   Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**   **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.**  Place an "X" in one of the seven boxes.
   Original Proceedings.  (1) Cases which originate in the United States district courts.
   Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
   Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
   Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
   Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
   Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
   Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
   **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
   Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
   Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.